FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

JUL 2 9 2011

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

*SCJ*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| and THE STATE OF MICHIGAN | : | |
| ex rel. Capitol Anesthesiology, P.C., | | |
| Jan Kersey, and Kathleen | : | |
| Hartney-Velazco, M.D. | | Civil Action No: |
| | : | |

## 1 11·CV-2513

| | | |
|---|---|---|
| | : | |
| Plaintiffs, | | **FILED UNDER SEAL** |
| | : | **PURSUANT TO** |
| v. | | **31 U.S.C. §3730(b)(2)** |
| | : | |
| | | **DO NOT PLACE IN PRESS BOX** |
| Stanford Plavin, M.D., Ambulatory | : | |
| Anesthesia of Atlanta, L.L.C. | | |
| Northwest Georgia Orthopedic Surgery: | | |
| Center, L.L.C., United Surgical Partners | | |
| International, Inc., Surgical Care | : | |
| Affiliates L.L.P., Surgical Care | | |
| Affiliates Perimeter Surgery Center, | : | |
| John Does 1-50, jointly and severally, | | **DO NOT ENTER ON PACER** |
| | : | |
| Defendants. | | **JURY TRIAL DEMANDED** |
| | : | |

**FALSE CLAIMS ACT COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

**FILING UNDER SEAL**

1.     Under the federal False Claims Act and Georgia State False Medicaid

Claims Act, this Complaint is to be filed in camera and remain under seal for a

period of at least sixty (60) days and shall not be served on defendants until the

1

Court so orders. The government may elect to intervene and proceed with the action within sixty (60) days after it receives the Complaint.

## INTRODUCTION

2.     This case is based on illegal payments made by Defendants Stanford Plavin and Ambulatory Anesthesia of Atlanta, L.L.C. ("AAA")[1] to pay operating expenses and costs, such as the salary of pre-operative care nurses, in return for an anesthesia services contract from the surgery center defendants, Northwest Georgia Orthopedic Surgery Center, L.L.C. ("NGOSC"), managed by United Surgical Partners International, Inc. ("USPI"), and Surgical Care Affiliates, L.L.P. ("SCA") through its affiliate, Perimeter Surgery Center ("SCA-PSC").

3.     Plaintiff Capitol Anesthesiology, P.C. ("Capitol") and its owner and President Dr. Kathleen Hartney-Velazco, M.D. and Vice President, Jan Kersey (collectively, the "Relators") previously provided anesthesia services to the NGOSC and SCA-PSC surgery centers for years, but those centers replaced Relators when Dr. Plavin and AAA agreed to provide a kickback in order to attain exclusive contracts with those centers.

4.     Defendants NGOSC, USPI, SCA and SCA-PSC are aware that the kickbacks from Dr. Plavin and AAA violated federal health care laws and the

---

[1] Defendant AAA was previously known as Ambulatory Anesthesia of Atlanta, P.C., but as of January 31, 2008 is now affiliated with Northside Anesthesiology Consultants, L.L.C. ("NAC") and bills its services under NAC's tax identification number.

2

requirements for Medicare and Medicaid reimbursement.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. §3730(b), which allows a private person to bring suit for a violation of the False Claims Act, pursuant to 28 U.S.C. §1345, which provides the District Courts with original jurisdiction over all civil actions commenced by the United States of America, pursuant to 28 U.S.C. §1331, because this action arises under the laws of the United States and pursuant to the Georgia State False Medicaid Claims Act.

6.     The acts proscribed by 31 U.S.C. §3729 et seq. and complained of herein were performed by the defendants who transact business and/or reside in this district.  Therefore, this Court has personal jurisdiction over defendants, and venue is proper in this district, pursuant to 31 U.S.C. §3732(a).

7.     Venue is also proper in this District pursuant to 28 U.S.C. §1391(b) and (c), because the defendants are subject to personal jurisdiction in this District and transact business in this District.

8.     The Georgia State False Medicaid Claims Act claims are filed pendant to the federal claims filed herein and pursuant to Ga. Code Ann. §§ 49-4-168 *et seq.*

## PARTIES

9.     Relator Capitol Anesthesiology, P.C. is a professional corporation

3

formed in Georgia that provides anesthesia services to ambulatory surgical centers in the Atlanta metropolitan area with its principal place of business in Morrow, Georgia. Capitol is an "original source" of this information within the meaning of 31 U.S.C. §3730(e)(4)(B).

10.    Relator Jan Kersey is the Vice President of Capitol and is a resident of Clayton County, Georgia.  She is an "original source" of this information within the meaning of 31 U.S.C. §3730(e)(4)(B).

11.    Relator Kathleen Hartney-Velazco, M.D. is a board-certified anesthesiologist, the owner and President of Capitol and is a resident of Clayton County, Georgia.  She is an "original source" of this information within the meaning of 31 U.S.C. §3730(e)(4)(B).

12.    Defendant Ambulatory Anesthesia of Atlanta, L.L.C. is a corporation formed in Georgia that provides anesthesia services to over 15 hospitals and ambulatory surgical centers throughout Georgia with its principal place of business in Atlanta, Georgia.  It is the successor of Ambulatory Anesthesia of Atlanta, P.C. and is now affiliated with Northside Anesthesiology Consultants, L.L.C.

13.    Defendant Stanford Plavin, M.D. is an anesthesiologist and the managing partner of AAA.  He is a resident of Georgia.

14.    Defendant Northwest Georgia Orthopedic Surgery Center, LLC is an ambulatory surgery center incorporated in Georgia with its principal place of

4

business in Marietta, Georgia.

15.     Defendant United Surgical Partners International, Inc. is an entity that operates more than 150 ambulatory surgery centers and surgical hospitals across the United States and it is incorporated in Texas and headquartered in Dallas, Texas, and at all relevant times provided management services at NGOSC in Marietta, Georgia.

16.     Defendant Surgical Care Affiliates, L.L.P. is an entity that operates more than 125 ambulatory surgery centers and surgical hospitals across the United States with its principal place of business in Birmingham, Alabama and at all relevant times operated the Perimeter Surgery Center in Atlanta, Georgia.

17.     Defendant Surgical Care Affiliates Perimeter Surgery Center is an ambulatory surgery center incorporated in Georgia that is operated by SCA with its principal place of business in Atlanta, Georgia.

18.     John Doe Defendants are those surgery center defendants which are under similar contractual arrangements with Defendant AAA or Dr. Plavin.

## SUMMARY OF ILLEGAL ACTIVITIES

Northwest Georgia Orthopedic Surgery Center

19.     From 1995 through 2005, Relator Capitol provided anesthesia services to Northwest Georgia Orthopedic Surgery Center in Marietta, Georgia.

20.     At all relevant times, NGOSC was managed and operated by United

5

Surgical Partners International.

21.    In October 2005, NGOSC began expanding its business and entered into an exclusive contract with Defendant AAA.

22.    Relators learned that AAA and Dr. Plavin had secured an exclusive contract for AAA by agreeing to pay operating expenses and costs, such as the salary of a nurse, Michele Hayes Balos, to provide pre-operative assessment services at NGOSC.

23.    However, NGOSC's global fee for its surgical services from Medicare, Medicaid and other payers already included payment for the functions of Ms. Balos.

24.    The payment of Ms. Balos' salary by AAA was unnecessary, improper and simply a kickback from AAA to secure an exclusive contract with NGOSC.

25.    NGOSC accepted the kickback and awarded AAA the exclusive contract.

26.    USPI was also aware of the nature of the kickback arrangement.  Dr. Velazco discovered that a regional Vice President of USPI was aware of the illegal nature of the kickback arrangement at NGOSC.

27.    Upon information and belief, these practices continue to this day.

SCA – Perimeter Surgery Center

6

28.    From 1991 through 2009, Capitol provided anesthesia services to an entity now known as Surgical Care Affiliates Perimeter Surgery Center in Atlanta, Georgia.

29.    In November 2007, Holly Ramey, the Regional Vice President of Surgical Care Affiliates, the parent company of SCA-PSC, approached Capitol about its willingness to share costs with SCA-PSC.

30.    Ms. Ramey asked Capitol to pay SCA-PSC for equipment, drugs and supplies used in the performance of its anesthesia services at the center.

31.    Relator Jan Kersey informed Ms. Ramey that a "cost-sharing" arrangement was improper for equipment, drugs and supplies that were already paid to SCA-PSC through its global fees.

32.    In March 2008, Ms. Ramey met with Defendant Dr. Plavin, who offered to pay operating expenses and costs, such as the salary a pre-operative nurse, to SCA-PCA.

33.    After that meeting, Ms. Ramey again contacted Dr. Velazco to inquire about Capitol's willingness to make similar provisions for a pre-operative assessment services at SCA-PSC and continue as the anesthesia services provider.

34.    Dr. Velazco refused to provide pre-operative assessment services, due to the illegal nature of the activity.

35.    Around that time, Dr. Velazco provided Ms. Ramey a copy of a legal

opinion that advised against the payment of operating expenses and costs, including the salary of a pre-operative nurse, by an anesthesia services provider.

36.    On May 29, 2009, SCA-PSC terminated its 16-year relationship with Capitol.

37.    SCA-PSC then requested proposals from both Capitol and AAA only for bidding on a new exclusive anesthesia services contract.

38.    Soon thereafter, SCA-PSC awarded an exclusive contract for anesthesia services to AAA, which is worth approximately $2.3 Million in revenue annually.

39.    Upon commencement of the contract, AAA began paying operating expenses and costs, such as the salary of a pre-operative nurse, Susan Smith L.P.N., and a technician, Henzlee Zeabou, to performed pre-operative assessments for SCA-PSC.

40.    In addition, Relators have also discovered that AAA has entered into other contracts with surgery centers and agreed to pay kickbacks, including operating expenses and costs, such as the salary of a nurse and monetary payments to those centers.

41.    For example, upon information and belief, AAA has similar arrangements with two endoscopy centers in the metropolitan Atlanta area.

## REGULATORY FRAMEWORK

42.     Relators bring this *qui tam* action in the name of the United States of America and the State of Georgia against the defendants, jointly and severally. This is an action pursuant to the False Claims Act, 31 U.S.C. §3729 *et seq*. ("FCA") to recover damages and civil penalties for false statements and claims that defendants made or presented to the United States and the State of Georgia. The violations arise out of defendants' requests for payment by Medicare and Medicaid and to the federal and state health care programs (hereinafter, the "Government" – which includes the State of Georgia) based on false claims for surgical care and anesthesia services. The false claims arise out of violation of anti-kickback laws, as more fully set forth below.

43.     By falsely billing, as set forth in this Complaint, the defendants knowingly caused the Government to pay defendants more than it would have had defendants followed the proper billing procedures.

44.     Realtors bring this action for violations of the FCA on behalf of themselves and the United States of America pursuant to 31 U.S.C. § 3730(b)(1) and the State of Georgia pursuant to the Georgia State False Medicaid Claims Act pursuant to Ga. Code Ann. §§ 49-4-168 *et seq*. (hereinafter, the "Acts").

45.     As required by the Acts, Relators have provided to the Attorney General of the United States, the United States Attorney for the Northern District of Georgia

9

and the Attorney General of the State of Georgia, simultaneous with the filing of the Complaint, a statement of all material evidence and information related to the Complaint. This disclosure statement is supported by material evidence known to plaintiff at this filing establishing the existence of defendants' false claims.

46.    The federal False Claims Act provides that those who knowingly and willfully make or cause to be made any false statement or representation of a material fact in any application for any benefit or payment from the federal government is liable for a civil penalty of not less than $5,500 and not more than $11,000 per occurence, plus three times the amount of damages which the federal government sustains because of those acts.  31 U.S.C. § 3729(a).

47.    The Medicare Program is a health insurance program for individuals 65 years and older, certain disabled individuals under age 65, and people of any age who have permanent kidney failure.  The Medicare statute is codified at 42 U.S.C. § 1395 (Title XVIII of Social Security Act, 42 U.S.C. § 483.1 *et seq.*).

48.    The Medicaid Program is a joint federal-state program funded under Title XIX of the Social Security Act.  42 U.S.C. § 1396 *et seq.*  As a prerequisite to enrollment as a provider in the Medicaid Program, hospitals are required to enter into provider agreements and agree, among other things, to comply with federal and state provider participation requirements as a condition of federal and state funding.  42 U.S.C. § 1396a(w).

49.     In 1972, Congress enacted the federal health care Anti-Kickback Statute, 42 U.S.C. § 1320a-7b *et seq.*, which prohibited payments, directly or indirectly designed to induce a person to refer or recommend services that may be paid for by federal government.

50.     The federal health care Anti-Kickback Statute provides that those who knowingly and willfully solicit or receive, offer or pay receive anything of value, whether directly or indirectly, in exchange for or to induce the referral of items or services for which a federal health care program may make payment shall be guilty of a felony.  42 U.S.C. § 1320a-7b(b)(1).

51.     As a condition of participation in the Medicare program and as a condition precedent to the receipt of payment or reimbursement from Medicare of costs incurred for treating and providing care to Medicare beneficiaries, Defendants completed cost reports that contained certifications by Defendants that they were familiar with the laws and regulations regarding the provision of healthcare services, and that the services identified in the cost reports were provided in compliance with Medicare laws and regulations.

52.     Based on Medicare regulations and laws cited herein, if costs or expenses are billed to Medicare through the submission of false cost reports, then the cost reports are false claims to Medicare because they are based on fraudulent activities and billings of Defendants.

11

53.     The Defendants knowingly and intentionally planned and initiated the above-described scheme to circumvent and violate healthcare fraud and obtain and/or inflate payments from the Government that the Government, but for the false statements, would not have paid.     This fraudulent maximization of Government reimbursement resulted in higher income, salary, bonuses and other payments to each defendant. The above-listed knowing and/or reckless violations of the anti-kickback Acts rendered Defendants out of compliance with both Medicare and Medicaid, and ineligible to receive Medicare and/or Medicaid reimbursements for services.

54.     Accordingly, all reimbursement claims submitted to Medicare and/or Medicaid were improper and fraudulent.

## COUNT I

### False Claims Act - Presentation of False Claims

55.     Relators re-allege and incorporate paragraphs 1 - 54 of this Complaint as if fully set forth herein.

56.     In performing the acts described above, Defendants through their own acts or through the acts of their officers, knowingly and/or recklessly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

57.   The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments, which resulted in its being damaged in an amount to be determined.

## COUNT II

### False Claims Act - False Statements

58.   Relators re-allege and incorporate paragraphs 1 - 55 of this Complaint as if fully set forth herein.

59.   In performing the acts described above, Defendants through their own acts or through the acts of their officers, knowingly made, used or caused to be made or used, a false record of statement to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. §3729(a)(2).

60.   The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments which resulted in its being damaged in an amount to be determined.

## COUNT III

### Reverse False Claims

61.   Relators re-allege and incorporate paragraphs 1 - 60 of this Complaint as if fully set forth herein.

62.   In performing the acts described above, Defendants knowingly used false records and statements to conceal the obligation to reimburse the federal

13

Government and the State of Georgia for monies improperly retained, in violation of 31 U.S.C. §3729(a)(7).

63.     Through Defendants' actions of improperly retaining funds to which they are not entitled, the United States has been deprived of the use of these monies and is entitled to damages in an amount to be determined.

## COUNT IV

### Georgia State False Medicaid Claims Act - Presentation of False Claims

64.     Relators re-allege and incorporate paragraphs 1 - 63 of this Complaint as if fully set forth herein.

65.     In performing the acts described above, Defendants through their own actions or through the acts of their officers, knowingly presented, or caused to be presented, to an officer or employee of the State of Georgia, a false claim under the Georgia State False Medicaid Claims Act in violation of Ga. Code Ann. §§ 49-4-168 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Relators respectfully request that this Court enter judgment against Defendants as follows:

a.  That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Civil False Claims Act, 31

14

U.S.C. § 3729 et seq. provides;

b.  That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented to the United States;

c.  That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relators necessarily incurred in bringing and pressing this case;

d.  That Relators be awarded the maximum amount allowed pursuant to the False Claims Act;

e.  That the State of Georgia be awarded damages as the Georgia State Medicaid False Claims Act provides;

f.  That Relators be awarded the maximum amount allowed pursuant to the Georgia State Medicaid False Claims Act; and,

g.  That this Court award such other and further relief as it deems proper.

## DEMAND FOR A JURY TRIAL

Relators demand a jury trial on all claims alleged herein.

Respectfully submitted,

BOONE & STONE

By: _____
David Wm. Bone
Ga. Bar No. 067730
Simone R. Siex
Ga. Bar No. 645858

15

Ryals D. Stone
Ga. Bar No. 831761

3525 Piedmont Road, NE
Eight Piedmont Center, Suite 200
Atlanta, GA 30305
(404) 239-0305

William S. Stone
Ga. Bar No. 684636

P.O. Drawer 70
Blakely, Georgia 39823
(229) 723-3045

*Of Counsel:*
Monica P Navarro (P52985)
      Louis C. Szura (P71763)
      Frank Haron Weiner
mnavarro@fhwnlaw.com
lszura@fhwnlaw.com

5435 Corporate Drive, Ste. 225
Troy, MI 48098-2624
(248) 592-0400          **Attorneys for Relator**